IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PROSONIC CORPORATION,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **JUDGE MARBLEY** |
| v. | : | **Case No. 07-803** |
| | : | **Magistrate Judge Terence P. Kemp** |
| | : | |
| **ERIC STAFFORD,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

### I.  INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction against Defendant pursuant to Rule 65 of the Ohio Rules of Civil Procedure.  Prosonic Corporation ("Plaintiff" or "Prosonic") brings this suit against Eric Stafford ("Defendant" or "Stafford"), a former employee, claiming breach of contract, violation of the Ohio Uniform Trade Secrets Act, and tortious interference with business relationships.  Prosonic alleges that following his termination, Stafford violated the terms of a written non-compete, non-disclosure, and non-solicitation agreement (the "Agreement") by immediately going to work for a competitor, the Water Development Corporation ("WDC").  For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

### II.  BACKGROUND

#### A.  Facts

Prosonic is a multi-service drilling company specializing in advanced Sonic Drilling techniques.  Only a limited number of drilling companies have the expertise to perform Sonic

Drilling. Prosonic has expertise in extraction, injection, and monitoring well-design and construction. It has also been hired for hazardous waste and groundwater contamination projects. Prosonic serves industrial firms, engineering firms, consultants, and other clients both domestically and internationally. Due to the specialized nature of its business, Prosonic invests significant time, expense, and resources to train its employees. Prosonic's management-level employees become familiar with Prosonic's drilling techniques, business model, bidding practices, pricing strategies, budgeting, customer preferences, and marketing strategy.

On February 15, 2004, Prosonic hired Stafford as the Project Manager for a Michigan branch office. In February of 2005, Stafford transferred to Prosonic's office in Pensacola, Florida, as a Project and Operations Manager. In this role, Stafford was given full access to Prosonic's Sonic Drilling techniques, worked directly with Prosonic's customers, and was exposed to confidential information about the company. Prior to his employment with Prosonic, Stafford had general drilling experience, but no previous experience with Sonic Drilling.

As a condition of his hiring and continued employment, Stafford signed a contract with Prosonic expressly agreeing not to work for a company that competes with Prosonic's Sonic/Rotasonic Technology, or disclose confidential information about Prosonic without its consent, for a period of five years. Stafford also agreed not to solicit Prosonic's customers, accounts, employees, and independent contractors for a period of two years. Finally, the Agreement stated that Stafford would deliver to Prosonic, and not keep copies of, any and all confidential or proprietary information in his possession.

On December 12, 2006, Prosonic terminated Stafford. One month later, Stafford began to work for WDC. WDC competes directly with Prosonic's Sonic Drilling services.

### B. Procedural History

On July 10, 2007, Prosonic filed its complaint and Motion for Preliminary Injunction in the Court of Common Pleas, Washington County, Ohio. On August 14, 2007, Stafford removed the case to this Court. In Count I, Prosonic claims breach of contract. In Count II, Prosonic claims violation of the Ohio Uniform Trade Secrets Act. In Counts III and IV, Prosonic claims tortious interference of its business relationships with customers and employees. Prosonic requests injunctive relief, compensatory damages, punitive damages, and costs. All responsive pleadings have been filed and these motions are ripe for resolution.

### III. STANDARD OF REVIEW

A preliminary injunction is a remedy used by the court to preserve the status between the parties pending a trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Courts will generally issue a preliminary injunction when the plaintiff establishes that: (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) the plaintiff will suffer irreparable injury without the injunction; (3) no third parties will be unjustifiably harmed if the injunction is granted; and (4) the injunction serves the public interest. *Leary v. Daeschner*, 228 F. 3d 729, 736 (6th Cir. 2000).

Ohio courts have long held that a preliminary injunction may be issued to enforce a covenant not-to-compete where the agreement to be enforced is valid, the agreement's restrictions are reasonable, and the party seeking the injunctive relief has demonstrated irreparable harm. *See, e.g., Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 991 (6th Cir. 2007) (citing *Raimonde v. Vlerah*, 42 Ohio St. 2d 21, 26 (1975)).

### IV. LAW AND ANALYSIS

### A.  Success on the Merits

### 1.  Breach of Contract

Prosonic alleges that Stafford breached the non-compete, non-disclosure, and non-solicitation provisions of his contract when he went to work for WDC.  Ohio courts will uphold a covenant not-to-compete only if it is reasonable.  *Raimonde*, 42 Ohio St. 2d at 26.  A reasonable covenant "is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.  Courts are empowered to modify or amend employment agreements to achieve such results."  *Id.*

Prosonic focuses its argument on demonstrating that the Agreement is reasonable.  Prosonic argues that the specialized nature of Sonic Drilling demonstrates the reasonableness of the non-compete clause.  Next, Prosonic describes the significant expenditures that it makes to develop quality employees and customer relationships, thereby validating the necessity of the non-solicitation clause.  It then goes on to list the specific employees and customers it believes were solicited by Stafford.  Prosonic concludes the breach of contract argument by asserting that the contract is not unduly harsh to Stafford, nor that it violates public policy.

Stafford first counters by asserting that Ohio courts do not enforce non-competition and non-disclosure covenants in situations where the employee was terminated–citing a 1912 Ohio Circuit Court decision, *Jewel Tea Co. v. Wilson*, 20 Ohio C.C. 233 (Ohio Cir. Ct. 1912).  *Jewel Tea*, however, is inapposite because there the employee alleged that he was improperly discharged.  *Id.* at 234.  Here, Stafford does not assert wrongful discharge. This distinction is crucial because decades of subsequent Ohio case law firmly establish an employer's right to uphold a covenant not-to-compete after it fires an at-will employee.  *See e.g., Lake Land Empl.*

*Group of Akron, L.L.C. v. Columber*, 101 Ohio St. 3d 242 (2004); *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 152 Ohio App. 3d 86 (7th Dist. 2003).

Second, Stafford contends that an injunction should not issue here because he had experience in the drilling business before working with Prosonic.  He argues that not only did he work in the drilling business before his employment with Prosonic, but also that his employment with Prosonic was limited to budgeting and operational duties involving skills that he had already acquired through previous employment.  Stafford relies on *American Building Services, Inc., v. Cohen,* which held that a two-year covenant not-to-compete preventing a janitor from working for any other janitorial company constituted an unreasonable hardship on the employee and was unnecessary to protect the plaintiff's business interests.  78 Ohio App. 3d 29, 34 (1992). The court focused heavily on the fact that the defendant had approximately ten years of experience performing a substantially similar type of work with other employers.  *Id.*  The Sixth Circuit has also found non-compete covenants to be unreasonable where the employee already had, or independently developed, the skill-set used while working for the plaintiff.  *See Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964 (6th Cir. 2002).

Stafford's argument is irrelevant to this case because he had no experience with Sonic Drilling prior to his stint at Prosonic.  The non-compete provision at issue in this case is limited to competitors of Prosonic's Sonic/Rotasonic business.  Thus, Stafford would not be prevented from employment with companies who only offer general drilling services, or from limiting his work with WDC to general drilling projects.  Stafford can continue to do the type of drilling work he did prior to his employment with Prosonic.  It does not burden Stafford by preventing him from using his pre-Prosonic expertise in the drilling business. This distinguishes the cases

cited by Stafford from the facts here.

Third, Stafford argues that the Agreement unduly burdens him. The Court is not persuaded. Stafford's current employer earns the predominant share of its revenue, over ninety percent, from non-Sonic work. Therefore, Stafford can not only continue using his pre-Prosonic expertise, but he can do so with WDC. Finally, Stafford does not assert and the Court does not find that enforcement of the Agreement would be injurious to the public. As such, the Court finds it likely that Prosonic will succeed on its breach of contract claim.

In addition to the non-compete clause, Prosonic alleges Stafford breached the covenant not-to-solicit. Stafford responds that the non-solicitation clause in the Agreement is an unreasonable impediment to ordinary competition because there is significant overlap in the customer-base between competing firms and it is not uncommon for customers to switch drilling companies from project to project. Stafford relies on *Willis Refrigeration, Air Conditioning & Heating, Inc., v. Maynard*, No. 05-047, 2000 WL 36102, at *8 (Clermont Jan. 2000), in which an Ohio appellate court affirmed the holding that in the construction industry, a company's non-solicitation restriction barring contractors from contracting former customers of the company was unreasonable. The situation here, however, is markedly different. In *Maynard*, the employee contracted with former customers, whereas in this case, Stafford's agreement with Prosonic merely prohibits solicitation of active customers and employees of Prosonic. Thus, the Court is not persuaded that the non-solicitation clause is an unreasonable limitation on competition.

Prosonic, however, has failed to prove that it is likely to succeed on its claim that Stafford violated this provision of the Agreement. With respect to customer solicitation,

Prosonic only adduced evidence regarding one project that Stafford allegedly solicited, the "Mike's Beer Barn" project. First, the evidence before the Court demonstrates that WDC secured this project through a public bid, not by luring the customer away from Prosonic. Because there is no evidence that this was an active Prosonic customer, as required by the non-solicitation clause, the Court does not find that this violates the terms of the Agreement. Second, the record shows that the customer contacted WDC in search of a lower bid option, further suggesting that no improper solicitation took place. Additionally, Prosonic's assertion that Stafford solicited Prosonic employees on behalf of WDC is mere speculation. Prosonic produced evidence that Stafford became involved in WDC's hiring of former Prosonic employees by providing recommendations upon request, but produced no evidence that Stafford personally induced employees to leave Prosonic as prohibited by the Agreement. Therefore, the Court does not find that Prosonic has shown it is likely to succeed on its claim that Stafford violated the non-solicitation clause of the Agreement.

Prosonic also failed to produce any evidence that Stafford has breached the non-disclosure clause of the Agreement. Thus, Prosonic has shown no likelihood of success on this claim at trial.

### 2. The Ohio Uniform Trade Secrets Act

Under the Ohio Uniform Trade Secrets Act, actual or threatened misappropriation of trade secrets may be enjoined. O.R.C. § 1333.62. A trade secret is something that encompasses both of the following: "(1) it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) it is the subject of efforts that

are reasonable under the circumstances to maintain its secrecy." O.R.C. § 1333.61(D). The Ohio Supreme Court has looked to the following factors in analyzing whether a litigant possesses a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel Besser v. Ohio State Univ.*, 89 Ohio St. 3d 396, 399-400 (2000). If plaintiff proves the existence of a trade secret he still carries the burden of demonstrating that misappropriation has occurred or is threatened; simply stating that inappropriate use of the information is inevitable is not sufficient. *See Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F. Supp. 2d 1028, 1042-43 (N.D. Ohio 2003). Proof by clear and convincing evidence is required to justify relief in trade secrets cases under O.R.C. § 1333.62. *Procter & Gamble*, 140 Ohio App. 3d at 268.

### A. Existence of Trade Secrets

First, the Court must determine whether Prosonic has clearly proven the existence of a trade secret. Prosonic alleges that its drilling technology, drilling techniques, business model, bidding practices, pricing strategy, annual budgets, customer preferences, and marketing efforts are all confidential trade secrets. It claims that people outside of the company have no knowledge or access to this confidential information. Stafford, on the other hand, maintains that Prosonic's customer-base is public knowledge, its Sonic Drilling techniques are used by other drilling firms, and that its budgetary and bidding information is not useful to other firms–especially after Prosonic was acquired by Boart Longyear.

James Walker, currently a management-level employee at Boart Longyear and a former manager at Prosonic, testified that Stafford's knowledge and training would give him a competitive advantage in preparing bids against Boart Longyear on behalf of WDC. Further testimony by Lawrence Knolle, the former chief operating officer and current Boart Longyear employee, detailed the databases and templates used by Prosonic in its bidding and budgeting processes, of which Stafford became familiar with. Knolle also testified that Prosonic took substantial security measures to keep this information private, including the limited security clearances within the Prosonic personnel ranks for access to such information. The Court finds that Prosonic would be likely to prove that this information constitutes trade secrets under Ohio law at trial.

## B.  Misappropriation

Second, the Court must determine whether misappropriation has occurred or is threatened. *Extracorporeal Alliance, L.L.C.,* 285 F. Supp. 2d 1042-43. Prosonic asserts that Stafford's knowledge of its business and customer base exposes Prosonic to misappropriation. Simply being exposed to the possibility of misappropriation or threatened misappropriation, however, is not sufficient for § 1333.62 purposes. Prosonic must establish actual or threatened misappropriation. *Id*. In this Prosonic has failed. Prosonic only produced evidence concerning the Mike's Beer Barn project–evidence which only speculatively links Stafford's knowledge of Prosonic to WDC's bid on the project.

The record suggests, however, that one of WDC's primary purposes in hiring Stafford was to grow its Sonic Drilling business in the Gulf Coast Region. Stafford testified to the fact that prior to his arrival, only a minimal portion of WDC's business in the Gulf Coast Region was

Sonic work, whereas it currently represents a significant percentage of new business. Considering that Stafford gained his understanding of the Sonic business while employed at Prosonic, this circumstantial evidence indicates that Stafford's work at WDC threatens to misappropriate Prosonic's trade secrets. His only knowledge of the Sonic business comes from his employment at Prosonic, and now he is using that knowledge to grow business for WDC. The Court, therefore, finds that Stafford's management of Sonic business and project bidding threatens to misappropriate Prosonic's trade secrets.

### 3. Tortious Interference with Business Relationships

To recover on a claim of tortious interference with business relationships, a plaintiff must show: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Shah v. Cardiology South, Inc.*, 2005 Ohio App. Lexis 195, at *25 (Montgomery Jan. 21, 2005) (citing *Wolf v. McCullough-Hyde Memorial Hosp., Inc.*, 67 Ohio App. 3d 349, 355 (1990)). Fair competition, however, is privileged and will defeat a claim of tortious interference with an at-will employment contract. *Fred Seigel Co., L.PA. v. Arter & Hadden*, 85 Ohio St. 3d 171 (1999). To determine whether defendant's conduct is improper or privileged, Ohio courts look to the nature of the actor's conduct, motive, interests interfered with, interests of the actor, societal interests, remoteness of the interference, and the relationship of the parties. *Dryden v. Cincinnati Bell Tel.*, 135 Ohio App. 3d 394, 414 (1st Dist. 1999) (citing RESTATEMENT OF THE LAW (SECOND), TORTS § 767).

Prosonic alleges that Stafford interfered with its customer relationships. Stafford counters that exclusive contracts with customers are not utilized in the drilling business and thus

competing with Prosonic for its customer base is privileged by fair competition. Relying on *Miller Bros. Excavating, Inc. v. Stone Excavating, Inc.*, Stafford argues that in industries where competitors have no "legal right or reasonable expectation to remain the exclusive provider of . . . services," the right of privilege defeats a tortious interference claim. No. 97-69, 1998 WL 12646, at *3 (Greene County Jan. 16, 1998).

The key element of the tortious interference claim in this case is whether Stafford intentionally caused a breach or termination of a business relationship between Prosonic and a customer or employee. As discussed above in Section (A)(1), Prosonic has failed to demonstrate a likelihood of success on the claim that Stafford solicited Prosonic customers or employees. Without a likelihood of success on the solicitation claim, or even arguing that Stafford engaged in non-solicitous tortious interference, the Court does not find that Prosonic is likely to prove that Stafford intentionally caused a breach or termination of Prosonic business relationships. Thus, the Court finds it unlikely that Prosonic will succeed on its tortious interference claim.

### B.  IRREPARABLE HARM

Under Ohio law, irreparable harm exists when there is a substantial threat of material harm that cannot be adequately compensated through monetary damages. *See Fraternal Order of Police v. Cleveland*, 141 Ohio App. 3d 63 (2001). Ohio courts have held that an substantial threat of harm exists when a defendant employee "possesses knowledge of the employer's trade secrets and begins working in a position that causes her to compete directly with the former employer or the product line that the employee formerly supported." *Jacono v. Invacare Corp.*, No. 86605, 2006 WL 832451, at *7 (Cuyahoga Ohio App. 8th Dist.) (citing *Procter & Gamble*, 140 Ohio App. 3d at 267). Under this framework, courts have found that injunctive relief is

warranted by establishing that an employee gained intimate knowledge of an employer's trade secrets and confidential information, and has begun working for a competitor in a substantially similar capacity. *Procter & Gamble*, 140 Ohio App. 3d at 274.

Stafford puts forth three counter-arguments explaining why Prosonic has not proven the threat of irreparable harm. First, Stafford argues that Prosonic is simply complaining of fair competition. Stafford maintains that Prosonic's customer list, employee-base, and drilling techniques are all publicly available. Stafford does not, however, cite to any public source of this information. This argument therefore fails. Second, Stafford argues that the contract Prosonic alleged it lost, potentially as a result of his breach, represents an easily quantifiable figure and therefore cannot constitute irreparable harm. Third, Stafford argues that the one-year passage of time between Stafford's hiring by WDC and this opinion make it unrealistic to suggest that a preliminary injunction is necessary to prevent any alleged irreparable harm going forward—the idea being that any harm that could have taken place would already have taken place. Prosonic responds by re-asserting that Stafford has solicited Prosonic's customers and employees, and that the threat of irreparable damages to its confidential Sonic Drilling techniques increases everyday that Stafford is permitted to violate the Agreement.

As previously discussed, Prosonic is likely to establish the existence of confidential trade secrets. The fact that Stafford has commenced working for a competitor of Prosonic in a substantially similar capacity to the position he held while at Prosonic is uncontested on the record. As such, this is precisely the scenario in which Ohio courts grant injunctive relief to prevent irreparable harm. *See Procter & Gamble*, 140 Ohio App. 3d at 267; *Jacono v. Invacare Corp.,* 2006 WL 832451, at *7. Therefore, in light of Stafford's role with WDC to bid on Sonic

projects and grow WDC's Sonic business, the Court finds that Stafford's breach of his non-compete agreement with Prosonic is sufficient to constitute the threat of irreparable harm.

### C. UNJUSTIFIABLE HARM TO OTHERS

The Court must also consider whether granting an injunction would cause unjustifiable harm to others, and if so, whether that harm outweighs the harm to Prosonic. *See Extracorporeal Alliance, L.L.C.*, 285 F. Supp. at 1045. The Court may take in to account the harm to Stafford, as well as the harm to any third-party beneficiaries of his actions, such as WDC. *See id.*

It is clear that Stafford and WDC would be significantly harmed if Stafford was enjoined from working at WDC after a full-year of employment there. However, this harm would not be at issue, but for the fact that Stafford breached the contract that he signed with Prosonic. Also, as the Court noted in Section (A)(1), Stafford would not be enjoined from using his background in general drilling, nor would Stafford be enjoined from working on the majority of WDC's projects, i.e., non-Sonic Drilling projects. Based on the weight of this evidence, the Court does not find that the harm to Stafford or WDC is unjustifiable, nor does it outweigh the harm currently being suffered by Prosonic.

### D. THE PUBLIC INTEREST

The Court's final consideration is whether an injunction will serve the public interest. The Supreme Court has firmly established a constitutional right to contract freely. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). Prosonic presents the well-accepted principle of Ohio law that upholding reasonable contracts is generally in the public interest. *See Rathford v. Proprietors' Insurance,* 47 Ohio St. 3d 1, 8 (1989) (holding that "persons have a fundamental right to contract freely with the expectation that the terms of the

-13-

contract will be enforced."). Prosonic asks the Court to fulfill the public expectation that terms of a reasonable contract will be enforced.

Stafford counters with a rather far-fetched argument that enforcement of this contract would eliminate competition in the Florida drilling market, creating a monopoly that would ultimately hurt the public. *See Brentlinger Enterprises v. Curran*, 141 Ohio App. 3d 640, 653 (2001) (holding that where non-compete agreements would result in a near monopoly for an employer, enforcement may be denied on grounds that it would harm the public.). This argument is unpersuasive. Enjoining Stafford from working for a competitor of Prosonic's Sonic/Rotasonic drilling business, for a period of five years, will not create a near monopoly. The public's interest in preserving the legitimacy of contracts favors enforcement of the Agreement.

## V.  CONCLUSION

For the foregoing reasons, Prosonic's Motion for a Preliminary Injunction is **GRANTED**. The Defendant, Eric Stafford, is hereby enjoined from violating the terms of the non-compete, non-disclosure, and non-solicitation agreement he entered into with the Prosonic Corporation–with the narrow exception that he may continue to work for WDC, but only on non-Sonic business.

**IT IS SO ORDERED.**

                                                 s/Algenon L. Marbley
                                               **ALGENON L. MARBLEY**
                                               **UNITED STATES DISTRICT COURT**

**Dated: February 12, 2008**